The State v. Laird.

---

THE STATE OF KANSAS v. WILLIAM LAIRD.

No. 16,105.   (100 Pac. 637.)

SYLLABUS BY THE COURT.

1. LARCENY—*Ownership of the Property—Wheat in a Freight-car on a Railway Side-track.* Where a freight-car loaded with wheat is standing upon the side-track of a railway company for the purpose of being switched by the railway company to an adjacent mill, where it is to be unloaded, and, while the car is so situated, wheat is stolen therefrom, the railway company is the owner of the wheat taken to the extent that a charge of larceny under section 2073 of the General Statutes of 1901, predicated upon such ownership, will be sustained.

2. PUBLIC DOCUMENTS—*Transcript of Evidence Taken at Pre-*

*liminary Examination by County Attorney's Stenographer.* Where the state furnishes the county attorney with a stenographer, who takes the evidence given at a preliminary examination for and under the direction of the county attorney, and afterward transcribes the same for the county attorney, who uses it in the examination of witnesses on the trial of the same case in the district court, such transcript is not a public document, but is the private property of the county attorney, and the attorney for the defendant has no legal right to the possession or use thereof.

3. CRIMINAL PROCEDURE—*Statement to Jury—Irrelevant Matters.* It is not error for the court, where a minor is being tried for a crime, to prevent counsel from discussing, when stating the case to the jury, facts which are immaterial and evidently intended to excite the sympathy of the jury, as that the defendant's mother is a widow; that he is good to her; that he is industrious, and gives his money to her; and that the punishment fixed by law for the offense charged is very severe.

4. —— *Discretion of the Trial Court.* A trial court has a wide discretion in controlling the manner in which trials are conducted before it, and a reviewing court will not interfere in the exercise of such discretion unless the rights of a litigant are prejudiced thereby.

5. LARCENY—*Proof.* The evidence in this case examined and found sufficient to sustain the conviction.

Appeal from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed March 6, 1909. Affirmed.

*Fred S. Jackson,* attorney-general, and *W. A. Ayres,* county attorney, for The State.

*John W. Adams,* for appellant.

The opinion of the court was delivered by

GRAVES, J.: William Laird, a minor, was convicted in the district court of Sedgwick county of stealing wheat from a freight-car belonging to the Atchison, Topeka & Santa Fe Railway Company, for which he was sentenced to the state industrial reformatory. He has brought the case here by appeal.

The first error presented is the refusal of the court

to allow a motion to discharge the defendant on account of a failure of proof upon the part of the state. This motion was, in effect, a demurrer to the evidence. It is urged that the evidence fails to show that any wheat was stolen, or that the wheat alleged to have been stolen belonged to, or was in the possession of, the Atchison, Topeka & Santa Fe Railway Company, as alleged. It appears from the evidence that the defendant and two other boys were seen taking sacks partly filled with something resembling grain from a freight-car; that within half an hour afterward it was ascertained, upon examination, that the car contained nothing but loose wheat. The car from which the sacks were taken stood upon a side-track belonging to the Atchison, Topeka & Santa Fe Railway Company. About the time of this transaction the defendant and two other boys sold clean wheat to a grain dealer, whose place of business was near the railroad track, and who had frequently bought from them wheat which had been swept up in cars after they had been unloaded. It does not appear that he purchased clean wheat of the defendant at any other time.

The defendant was born and raised in the city of Wichita, and resided near the railroad track. The Kansas Milling Company owned a flouring-mill in the vicinity of the railroad and had large quantities of wheat shipped to the mill. Other railroad companies having wheat for this mill were compelled to have their cars switched to the mill over the tracks of the Atchison, Topeka & Santa Fe Railway Company. One of the Santa Fe tracks was called "the long grain track." On it cars loaded with grain, and those from which grain had been unloaded, were switched to and from the mill. The milling company permitted boys to sweep out the unloaded cars and keep whatever grain was obtained in this way. The boys found it so remunerative that a few of them, among whom was the defendant, made it a part of their business. This, in

substance, is the evidence of the state as it was when the motion to discharge was made.

The defendant denied generally that he had anything to do with taking the wheat. He admitted on cross-examination that he had been arrested by the truant officer about two years before, and had served a term in the reformatory at Topeka. Upon this evidence the jury found the defendant guilty, and the court approved the verdict.

The section of the statute under which the defendant was charged is section 2073 of the General Statutes of 1901, which reads:

"If any larceny be committed in any railway depot, station-house, telegraph office, passenger-coach, baggage, express or freight-car, or any caboose on any railway in this state, the offender may be punished by confinement and hard labor not exceeding seven years."

Since the track upon which the car from which the wheat was taken stood was owned and operated by the Atchison, Topeka & Santa Fe Railway Company for switching purposes, it follows that any car of grain on that track would, for the time being, and until the switching was completed, be in the care, custody and possession of that railway company, and such possession would be sufficient ownership upon which to predicate the charge of larceny. (25 Cyc. 35; *The State v. Walker,* 65 Kan. 92, 68 Pac. 1095.) It was unnecessary to show that the Atchison, Topeka & Santa Fe Railway Company owned the car out of which the wheat was taken, or that it was the owner of the wheat stolen. The fact that the car and wheat were both in its care and possession was sufficient.

The defendant further complains that he was not permitted to cross-examine some of the state's witnesses as fully as justice required, and that material evidence offered by him was rejected. An examination of the abstract shows that some of the grounds of complaint are very technical, and that the rulings of the court could not in any degree prejudice the rights of the de-

fendant. To illustrate: The car out of which the defendant was seen to take the wheat was on the track of the Atchison, Topeka & Santa Fe Railway Company. As to this there was no controversy. The state relied upon this fact as sufficient proof of ownership. In this view it was immaterial what company owned the cars or who owned the wheat. On the same track there were several other cars—some twenty or more—belonging to different companies. A witness testified that he saw the defendant taking wheat out of the car, and then left, returning in about thirty minutes with a boy, who climbed up and looked into the car and saw that it was loaded with loose wheat. On cross-examination the defendant interrogated the witness about the number of tracks, the number of cars, their color, and the names of the companies on them, apparently for the purpose of confusing the witness about the identity of the car at which the defendant had been seen. The court cut off this cross-examination, which we think was within the scope of the discretion which every court has in fixing the limit of proper cross-examination. The evidence excluded was all of the same general nature. We have examined each objection made, and do not regard any of them sufficiently important and material to require separate or further consideration.

The mother of the defendant was examined as a witness for him, and the court sustained objections to proof that she was a widow; that the defendant was a good boy to work and gave his wages to her; and that he did not attempt to avoid arrest. All of this was immaterial, and properly excluded.

It is further insisted that the court erred in refusing to require the county attorney to furnish counsel for defendant with a transcript of the evidence taken at the preliminary examination of the defendant for use during the cross-examination of the state's witnesses. In Sedgwick county the county attorney is allowed a stenographer, who is paid by the state. This stenographer,

under the direction of the county attorney, took the evidence given at the preliminary examination for the prosecutor's use in the preparation and trial of the case. During the trial in the district court the county attorney used a transcript of this evidence in his examination of the witnesses. Upon cross-examination the attorney for the defendant requested the county attorney to let him use the transcript while cross-examining the witnesses for the state, which was denied, and the court refused to compel a compliance with such request. Why the county attorney declined to extend this courtesy to opposing counsel we do not know, and we are not informed of any reason why the attorney for defendant supposed that he was entitled, as a matter of legal right, to the use of such transcript. No reason has been given for the view of either side. The evidence does not appear to have been taken under section 51 of the criminal code. The abstract, without an express statement to that effect, conveys the impression that the trouble about the transcript was the result of professional irritation, which is not commendable in the parties, and which seldom arises in open court. In our view the transcript was not a public document; it was the personal, private property of the county attorney as much as if he had personally made the transcript. The court was under no obligation to require the surrender of this paper to defendant. Whatever may be said concerning the refusal of the county attorney to accede to the request of the defendant's counsel, we can not say that the court erred in its ruling in the premises.

Complaint is made that the court refused to permit defendant's counsel in the statement of his case to the jury to discuss the degree of punishment fixed by law for the offense charged. The court stated that the guilt or innocence of the accused was the only question for the jury to consider. The punishment in case of conviction was a matter with which they had no concern. We see no error in this. Courts in some cases permit immaterial and irrelevant matters to be presented to the jury and allow

counsel to discuss matters which only tend to create sympathy in behalf of the defendant, and at other times counsel are held down throughout the trial to facts strictly material and germane to the issue which the jury must determine. Courts must necessarily be given a wide and liberal discretion in the control of trials before them, and reviewing courts can not interfere unless this discretion is so far transgressed as to prejudice the rights of the complaining party. The proper administration of justice and the prompt dispatch of pending business demand that time shall not be unnecessarily consumed in the discussion of unimportant and frivolous questions or in the presentation of immaterial or irrelevant testimony. Trial courts are charged with the duty of giving to every litigant a full and fair hearing, and at the same time of transacting pending business as rapidly as the proper administration of justice will permit. To discharge this difficult task requires patience, forbearance, and at times the enforcement of rules which may seem harsh and arbitrary.

It is claimed that the court erred in each instruction given, but after a careful examination of them, thirteen in number, we are unable to find error in any of them. On the contrary we think the charge, as a whole, contains a clear, full and fair exposition of the law applicable to the case, and fully protected the rights of the defendant. Where any of the instructions were specifically objected to, the objection is fully answered by what has already been stated herein.

Finally, the brief closes with the following statement:

"Sustaining a conviction in this case means forever the destruction of the boy, the blighting of his future prospects, and the blighting of a mother's love, all of which considerations enter into the question as to whether the judgment of the lower court should be reversed or sustained. That this boy's future is worth more than 80 cents or 45 cents, claimed by the state to

have been lost to some one; as to who lost this 80 cents or 45 cents, if any one, the evidence fails to show."

This, like the general trend of defendant's brief, appeals to the sentimental side of the court, but is not very helpful in determining the legal questions presented. This court fully appreciates the consequences which follow the judgment of the district court, both to the defendant and his mother, but after carefully examining the record we are unable to say that justice has not been done, and, therefore, the judgment is affirmed.